# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3244

_____

| | | |
|---|---|---|
| W. H. Noe, also known as W. H. (Dutch) Noe, doing business as Ducks & Ducks, Inc.; Tommy Taggart, doing business as Mallard Magic; Brian Herndon, doing business as Big Creek Hunting, | * * * * * * * | |
| Appellants, | * * | Appeal from the United States District Court for the |
| v. | * * | Eastern District of Arkansas. |
| Scott Henderson, In His Official Capacity as Director of the Arkansas Game & Fish Commission, | * * * * | [PUBLISHED] |
| Appellee. | * | |

_____

Submitted: July 31, 2006
Filed: August 7, 2006

_____

Before RILEY, COLLOTON, and GRUENDER, Circuit Judges.
_____

PER CURIAM.

In this declaratory judgment action, W. H. Noe, d/b/a Ducks & Ducks, Inc., Tommy Taggart, d/b/a Mallard Magic, and Brian Herndon, d/b/a Big Creek Hunting,

appeal from an order of the district court[1] granting summary judgment in favor of Scott Henderson, in his official capacity as Director of the Arkansas Game and Fish Commission. For reversal, appellants argue that the district court erred in holding that the federal Migratory Bird Treaty Act (MBTA), 16 U.S.C. §§ 703-712, and federal regulations promulgated thereunder, do not preempt Arkansas regulations governing activities involving captive-reared mallard ducks.

We review the district court's decision de novo. See Crain v. Bd. of Police Comm'rs, 920 F.2d 1402, 1405-06 (8th Cir. 1991) (review standard; summary judgment is particularly appropriate where unresolved issues are primarily legal rather than factual); Nat'l Bank of Commerce v. Dow Chem. Co., 165 F.3d 602, 607 (8th Cir. 1999) (preemption is question of law that this court reviews de novo). Federal preemption occurs when (1) Congress explicitly prohibits state regulation; (2) Congress implicitly prohibits state regulation by pervasively occupying the regulatory field; (3) state law directly conflicts with federal law; or (4) a federal agency, acting within the scope of its delegated authority, intends its regulations to have preemptive effect. See Chapman v. Lab One, 390 F.3d 620, 624-25 (8th Cir. 2004).

To begin, we read the district court's statement that "[c]aptive-reared mallard ducks are not within the scope of the [MBTA]," in its context, to express the view that captive-reared mallard ducks are not within the scope of federal permitting requirements. The district court implied that Congress specifically left room for the states to regulate in the area of permit requirements for captive-reared mallard ducks, and therefore "[n]othing in the [MBTA] prohibits a State from requiring a permit for possession or sale of captive-reared mallard ducks." Such reasoning is consistent with federal preemption principles. See Cipollone v. Liggett Group, Inc., 505 U.S. 504,

[1]The Honorable J. Leon Holmes, Chief Judge, United States District Court for the Eastern District of Arkansas.

-2-

517 (1992) (Congress's enactment of provision defining preemptive reach of statute implies that matters beyond that reach are not preempted).

We further agree with the district court that neither the MBTA nor any regulation promulgated thereunder conflicts with or expressly prohibits the state regulations at issue. Contrary to appellants' interpretation of 16 U.S.C. § 711 ("Nothing in this subchapter shall be construed to prevent the breeding of migratory game birds on farms and preserves and the sale of birds so bred under proper regulation for the purpose of increasing the food supply."), the word "regulation" in section 711 plainly refers to the regulatory process, see Black's Law Dictionary 1311 (8th ed. 2004) (defining "regulation" as "[t]he act or process of controlling by rule or restriction"), not specifically and exclusively to 50 C.F.R. § 21.13.[2] In other words,

_____

[2]50 C.F.R. § 21.13 provides in part,

Captive-reared and properly marked mallard ducks, alive or dead, or their eggs may be acquired, possessed, sold, traded, donated, transported, and disposed of by any person without a permit, subject to the following conditions, restrictions, and requirements:

. . . .

(b) All mallard ducks possessed in captivity, without a permit, shall have been physically marked by at least one of the [methods described] . . . .
(c) When so marked, such live birds may be disposed of to, or acquired from, any person and possessed and transferred in any number at any time or place: *Provided,* That all such birds shall be physically marked prior to sale or disposal . . . .
(d) When so marked, such live birds may be killed, in any number, at any time or place, by any means except shooting. Such birds may be killed by shooting only in accordance with all applicable hunting regulations governing the taking of mallard ducks from the wild: *Provided,* That such birds may be killed by shooting, in any number, at any time, within the confines of any premises operated as a shooting preserve under State

we interpret section 711 as allowing the states to engage in the process of regulating the breeding and sales of migratory birds reared in captivity for food, provided the states do so in a manner consistent with federal law.  Accord 16 U.S.C. § 708 (nothing in MBTA shall be construed to prevent states and territories from making and enforcing laws or regulations for further protection of migratory birds, nests, and eggs, provided they are consistent with MBTA and treaty conventions); 50 C.F.R. § 20.72 (no person at any time, by any means, or in any manner, shall take, possess, transport, or export any migratory bird, or any part, nest, or egg of such bird, in violation of any applicable law or regulation of any state).

Accordingly, the order of the district court is affirmed.

_____

license, permit or authorization.